UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DRIVE FINANCIAL SERVICES, LP, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:06-CV-1288-G |
| PAUL L. GINSBURG, | ) ) | **ECF** |
| Defendant. | ) ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are (1) the motion of the defendant, Paul L. Ginsburg
("Ginsburg"), to dismiss the complaint of the plaintiffs, Drive Financial Services, LP
and Drive Trademark Holdings, LP (collectively, "Drive") for lack of personal
jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), and (2) the motions of the plaintiffs
to strike evidence in the defendant's appendix and to refer the case to mediation.  For
the reasons set forth below, the motion to dismiss is granted, the motion to strike is
granted, and the motion to refer to mediation is denied as moot.

I.  <u>BACKGROUND</u>

This is a dispute between Drive and Ginsburg involving trademark
infringement and cybersquatting.  *See* Plaintiff's Original Complaint ("Complaint")

¶ 1.  Drive Financial Services, LP is a nationwide automobile financial services

company that owns Drive Trademark Holdings, LP.  *Id.* ¶ 2.  Drive Trademark

Holdings, LP owns and manages the "Drive" trademark.  *Id.*  Both partnerships are

domiciled in Delaware but maintain their principal place of business in Dallas, Texas.

*Id.* ¶¶ 6-7.  Ginsburg is an individual who resides in San Diego, California.  *Id.* ¶ 8.

Ginsburg has never:  (1) owned or leased real property in Texas,

(2) maintained any telephone number, mailing address, or post office box in Texas,

(3) sold products or services in Texas, (4) advertised the sale of products or services in

Texas, (5) entered into a contract with any resident of Texas, via the Internet or

otherwise, (6) entered into a contract governed by Texas law, via the Internet or

otherwise, (7) retained an agent for service of process in Texas, (8) been registered or

licensed to conduct business in Texas, (9) had any agents, employees, vendors, or

suppliers who reside in Texas, (10) paid taxes to any taxing authorities in Texas, or

(11) been registered to vote in Texas.  Defendant's Memorandum of Points and

Authorities in Support of Motion to Dismiss for Lack of Personal Jurisdiction

("Motion to Dismiss") at 1-2.

Ginsburg owns the domain name www.drive.com ("drive.com") which he

acquired and registered through Network Solutions, LLC[1] ("Network Solutions"), a

---

[1]      Network Solutions, LLC is substituted for the plaintiffs' incorrect
identification of the company as "Network Solutions, Inc."  *See*
http://www.networksolutions.com/legal/legal-notice.jsp.

company that provides the additional services of web hosting, website design, and e-mail.  Plaintiffs' Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support ("Plaintiffs' Response") at 2-3.  Network Solutions allows domain owners to choose an "under construction" option.  Currently, when an internet user types "www.drive.com" into their browser, a webpage appears which reads "Network Solutions" on the top left-hand side and, on the top right-hand side, "Coming soon!" followed by "This site is under construction."  *See* Motion to Dismiss at 3.  Network Solutions maintains the rest of the webpage which consists of sponsored hyperlinks, advertisements, a search engine, and other services.  Motion to Dismiss at 2-3.  These links can be related to the domain name or to Texas-specific businesses.  Motion to Dismiss at 3-4.

Ginsburg received two emails bearing Texas area codes dated December 6, 2004 and August 11, 2006, respectively.  Appendix to Plaintiffs' Response to Defendant's Motion to Dismiss For Lack of Personal Jurisdiction and Brief in Support ("Plaintiffs' Appendix") at 91, 93-94, 96, 98.  The emails were sent using the drive.com "under construction" webpage.  *See* Plaintiffs' Response at 19.  Both emails contained language inquiring as to the availability of the domain name.  Plaintiffs' Appendix at 91, 96.

Ginsburg is presently unemployed and has spent the last ten years of unemployment caring for his terminally-ill father.  Deposition of Paul L. Ginsburg

("Ginsburg's Deposition") at 14: 1-11, *located in* Appendix to Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Reply Appendix") at 16.  His wife is also unemployed while caring for their child.  *Id.* at 14:19-23.  Consequently, Ginsburg and his wife utilize their savings for living expenses.  *Id.* at 14-15.

By contrast, Drive's controlling shareholder, HBOS, plc., has assets in excess of £540 billion.  Appendix to Defendants's Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Defendant's Appendix") at 60.  Drive, itself, has an overall car-financing portfolio of $1.74 billion. *Id.* at 58.

On July 20, 2006, Drive filed the current action against Ginsburg alleging a violation of the Anti-Cybersquatting Consumer Protection Act in conjunction with various state and federal trademark claims.  *See* Complaint ¶¶ 29-53.  Ginsburg responded on October 5, 2006, by filing the instant motion to dismiss for lack of personal jurisdiction.  *See* Motion to Dismiss.

II.  ANALYSIS

A.  The Factual Standard:  A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert.*

*denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592

(5th Cir. 1999).  If the district court chooses to decide the matter without an

evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case

for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

 The court will take the allegations of the complaint as true, except where they

are controverted by opposing affidavits, and all conflicts in the facts are resolved in

favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making

its determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Allred v. Moore* &

*Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);

*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

## B. The Legal Standard

 A federal district court may exercise personal jurisdiction over a nonresident

defendant if (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that he

would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore v.*

*Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id.*  Because the Texas long-arm statute confers jurisdiction to the limits

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,

197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.*

*Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*,

20 F.3d at 647 n.1; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.*

(Vernon 1997) (Texas long-arm statute).

## C.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal

jurisdiction over a non-resident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on his part such

that the nonresident defendant could anticipate being haled into the courts of the

forum state; and (2) it must be fair or reasonable to require the nonresident to defend

the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462,

474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d

1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause

ensures that persons have a "fair warning that a particular activity may subject [them]

to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard.  *J.R. Stripling v. Jordan*

*Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and

citations omitted).  "When a court exercises personal jurisdiction over a defendant

based on contacts with the forum related to the particular controversy, the court is

exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773,

777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  General

jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "continuous and systematic," even though the claim is unrelated to

those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the

constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting

*International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party

or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a

substantial connection between the nonresident defendant and the forum state.  *Jones*

*v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert.*

*denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994). When the underlying cause of action is based on an intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); see also *FCA Investments Company v. Baycorp Holdings, Ltd.*, 48 Fed. App'x 480 (5th Cir. 2002) (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state is sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim).

1. *Specific Jurisdiction*

Drive argues that Ginsburg has made sufficient minimum contacts with the forum state for this court to exercise personal jurisdiction.  Plaintiffs' Response at 16. Drive contends that Ginsburg's website, drive.com, is a vehicle for Texas residents to inquire whether the site is for sale.  *Id.* at 18-19.  Likewise, because the e-mail correspondence bears Texas area codes, Ginsburg has knowledge of the forum in which his conduct is directed.  *Id.*  In addition, Drive asserts that drive.com falls in the middle spectrum of the *Zippo* test and the nature and level of commercial activity of drive.com support jurisdiction over Ginsburg.  *Id.*  Essentially, Drive argues that because Texas residents felt the effect of Ginsburg's purported cybersquatting through the use of Texas-specific hyperlinks and messaging capabilities, Ginsburg has purposely availed himself of conducting activities in this forum.  *Id.*

This Circuit has adopted the approach of *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), in determining whether the defendant's operation of an Internet website provides the requisite minimum contacts for personal jurisdiction.  See *Revell*, 317 F.3d at 470; *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999).  The *Zippo* decision established a sliding-scale test to evaluate the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124.  District courts in Texas have employed the *Zippo* analysis in specific jurisdiction cases.  See *Mothers Against Drunk*

*Driving v. DAMMADD, Inc.*, No. 3:02-CV-1712-G, 2003 WL 292162, at *5 (N.D.

Tex. Feb. 7, 2003) (Fish, Chief J.); *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218

F. Supp. 2d 820, 824-26 (N.D. Tex. 2002); *American Eyewear, Inc. v. Peeper's Sunglasses

and Accessories, Inc.*, 106 F. Supp. 2d 895, 900 n. 10 (N.D. Tex. 2000).

The *Zippo* sliding-scale analysis categorizes Internet use into a three point

spectrum.  At one end of the spectrum, a defendant "merely establishes a passive

website that does nothing more than advertise on the Internet."  *Mink*, 190 F.3d at

336.  Personal jurisdiction based on a "passive website" is inappropriate.  See *id.*;

*Carrot Bunch*, 218 F. Supp. 2d at 825.  At the other end of the spectrum, "a

defendant clearly does business over the Internet by entering into contracts with

residents of other states which 'involve the knowing and repeated transmission of

computer files over the Internet. . . .'"  *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F.

Supp. at 1124).  In this situation, personal jurisdiction over the nonresident

defendant is proper.  See *id.*; *Carrot Bunch*, 218 F. Supp. 2d at 825.  Between these

two extremes are cases where a defendant's website allows a visitor to exchange

information with a host computer.  *Mink*, 190 F.3d at 336.  "In this middle ground,

'the exercise of jurisdiction is determined by the level of interactivity and commercial

nature of the exchange of information that occurs on the [w]ebsite.'"  *Mink*, 190 F.3d

at 336 (quoting *Zippo*, 952 F. Supp. at 1124); *American Eyewear*, 106 F. Supp. 2d at

901.  The critical inquiry, however, as with any personal jurisdiction case, is whether

the contacts suggest that the nonresident defendant purposefully directed his

activities toward the forum state or purposefully availed himself of the privilege of

conducting activities within the forum state.  See *Origin Instruments Corporation v.*

*Adaptive Computer Systems, Inc.*, 1999 WL 76794 at *2 (N.D. Tex. 1999); see also

*Hanson*, 357 U.S. at 253; *World-Wide Volkswagen*, 444 U.S. at 298-99.

Applying the *Zippo* scale to the facts of this case, the court finds that the

allegations do not support a finding of specific jurisdiction over Ginsburg.  The

drive.com website is devoid of any interactive content related to Ginsburg.  For

Ginsburg's part, it bears a passive "under construction" message.  The rest of the

webpage offers hyperlinks, a search engine function, and the ability to send messages

to the domain registrant -- all provided by the host Network Solutions.  If clicked, the

hyperlinks direct a user to third-party commercial websites.

Drive has alleged no facts supporting an affiliation between Ginsburg and the

owners of these other commercial websites or between Ginsburg and Network

Solutions.[2]  Additionally, Drive alleges no buying, selling, or other commercial

activity between Ginsburg and web visitors.  In fact, Drive concedes that Ginsburg

---

[2]      The evidence indicates that Network Solutions is affiliated with
Ginsburg only as a service provider.  *See* Plaintiffs' Response at 14.  Specifically,
Network Solutions provides domain registration and other ancillary services.  See *id.*
at 10, 14.  There is no evidence that Ginsburg receives any financial benefit by
registering his domain with Network Solutions.

has never used drive.com in the bona fide offering of goods or services and that the website has a history of inactivity. Plaintiffs' Response at 3-4.

Assuming, *arguendo*, that drive.com falls into the middle spectrum illustrated in *Zippo*, the court then must determine the level and amount of commercial activity between the owner of the website and its customers. In the instant case, the only activity between Ginsburg and internet users is unsolicited inquiries from potential buyers of the domain name. A handful of unilateral solicitations from purported Texas residents does not constitute the level of commercial activity that would support personal jurisdiction in the internet context. However, if the activity did rise to that level, personal jurisdiction would still be improper in the instant case because such a result would, for the reasons discussed below, violate traditional notions of fair play and substantial justice.

### 2. *General Jurisdiction*

Drive urges this court, by applying the *Zippo* analysis, to find that it has general jurisdiction over Ginsburg. Plaintiffs' Response at 8. However, the Fifth Circuit has found the *Zippo* test to be better suited to determining whether the court has specific jurisdiction than determining the existence of general jurisdiction. *Revell*, 317 F.3d at 471. In *Revell*, the court noted,

> While we deployed this sliding scale in *Mink v. AAAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute

> the requisite substantial, continuous and systematic
> contacts required for a finding of general jurisdiction -- in
> other words, while it may be doing business *with* Texas, it is
> not doing business *in* Texas.").

*Id.* (emphasis in original).  Even so, Drive avers that the drive.com website falls in the middle of the *Zippo* spectrum and that the level of commercial activity establishes Ginsburg's substantial, systematic, and continuous presence in Texas.  *Id.* at 8-16.

For a court to exercise general jurisdiction, a nonresident defendant must have continuous and systematic contacts with the forum state.  *Helicopteros*, 466 U.S. at 414-17.  Cases involving general jurisdiction suggest that these contacts must be very substantial.  *Id.* at 416-19 (finding no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots to Texas for training).  Consequently, an exercise of general jurisdiction would be improper here.

Because a *Zippo*-like analysis is inapposite in the arena of general jurisdiction, the two e-mails sent to Ginsburg -- purportedly from forum residents -- would provide the only basis upon which the court could find general jurisdiction.  The mere existence of two e-mails sent with Texas phone numbers, however, falls far short of the continuous and systematic contacts necessary for a sweeping exercise of jurisdiction.  Subjecting Ginsburg to general jurisdiction based on these facts would allow many website or domain owners to be sued in foreign jurisdictions without the

benefits of the forum's protections and would also obviate the need for a personal jurisdiction analysis in the internet context.

### D. Fair Play and Substantial Justice

The due process inquiry limits a court's jurisdiction over a nonresident if the exercise of that jurisdiction would not comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  In evaluating fairness and substantial justice, the Fifth Circuit considers "(1) the burden on the nonresident defendant, (2) the forum states's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interests of the several states in furthering fundamental social policies." *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 2968 (2006).  The burden rests on the defendant to prove that litigating in this court would be "so gravely difficult and inconvenient" that he would be at a "severe disadvantage" relative to the plaintiff.  *Burger King*, 471 U.S. at 478.

Ginsburg, a California resident, is an individual with no tangible ties to Texas. *See* Motion to Dismiss 1-2.  He and his wife are unemployed, subsisting on savings. Ginsburg's Deposition 14: 1-11, 13-15, 19-25 to 15:1, *located in* Reply Appendix at 16-17, Exhibit 3.  While evidence of Ginsburg's resources is scant, it is

uncontroverted. Consequently, defending himself in Texas would create a considerable financial hardship for Ginsburg.

Texas has an interest in protecting partnerships that are headquartered domestically.  Similarly, California has an interest in stopping corporate or individual residents from violating the law.  This factor weighs equally for both parties.

Drive has a vested interest in protecting its trademarks.  However, there is a substantial disparity in resources between Drive and Ginsburg.  Drive should have little trouble maintaining this action in California while still fully litigating the issues. This factor weighs in Ginsburg's favor.

Pursuing this controversy in California would allow the case to be decided on the merits with less chance of a default judgment.  Choosing a court that is a fair and reasonable forum for both parties is inherently an efficient use of judicial resources and furthers states' shared interests in promoting fundamental social policies.

The weight of the fairness factors tips heavily in Ginsburg's favor.  While the ability of a plaintiff to be able to choose a forum and a state's interest in protecting its citizens can require a heavy burden on a defendant, the court concludes that ordering Ginsburg to defend in Texas would offend "traditional notions of fair play and substantial justice" as described in *International Shoe*, 326 U.S. at 316.

D.  Plaintiffs' Motion to Strike

Drive asks the court to strike exhibits 1-2 and 4-15 contained in the Reply Appendix pursuant to Local Rule 7.1(f).  Plaintiffs' Objection and Motion to Strike Defendant's Purported Evidence in Appendix to Defendant's Reply and Brief in Support at 1.  Because striking Exhibits 1-2 and 4-15 of the Reply Appendix is consistent with the local rules of this court, the motion is granted.  See *Dethrow v. Parkland Health Hospital System*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.); see also *Springs Industries, Inc. v. American Motorists Insurance Company*, 137 F.R.D. 238, 240 (N.D. Tex. 1991) (Fitzwater, J.) (discussing Local Rule 5.1(f), which has been renumbered 7.1(f)).  However, because the court relied only on Exhibit 3 of the Reply Appendix, the motion to strike has no bearing on the court's decision.

III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss for lack of personal jurisdiction is **GRANTED**, and the plaintiffs' motion to strike exhibits 1-2 and 4-15 of the Reply Appendix is **GRANTED**.  The plaintiffs' motion to refer the case to mediation is **DENIED** as moot.

**SO ORDERED**.

July 19, 2007.

_____
A. JOE FISH
CHIEF JUDGE